

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-12-2008

# USA v. Lionetti

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2725

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Lionetti" (2008). *2008 Decisions.* Paper 241.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/241

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 07-2725

_____

UNITED STATES OF AMERICA

v.

ANTHONY LIONETTI,

Appellant.

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 05-cr-00310)
District Judge: Honorable Robert B. Kugler

_____

Submitted Under Third Circuit LAR 34.1(a)
July 22, 2008

Before:  McKEE, FUENTES, and JORDAN, *Circuit Judges*

_____

(Filed: November 12, 2008)

_____

OPINION OF THE COURT

_____

JORDAN, *Circuit Judge*.

On October 13, 2006, a jury found Anthony Lionetti guilty of income tax evasion.

Lionetti raises essentially two issues on appeal.  First, he claims that the United States

District Court for the District of New Jersey erred by excluding what he characterizes as "reverse 404(b) evidence" at trial. (Appellant Br. at 36.) Second, he argues that the sentence imposed by the District Court was, for various reasons, improper. We will affirm the District Court's evidentiary ruling and the sentence it imposed.[1]

## I. Factual and Procedural Background

Lionetti is a physician and the sole owner of two medical practices in New Jersey focused on the treatment of Lyme disease. Donald DuBeck was the business manager of those practices. On April 26, 2005, Lionetti and DuBeck were indicted on sixteen counts of tax evasion for failure to pay personal income taxes and for failure to pay employment taxes associated with Lionetti's medical practices. Count One of the indictment charged Lionetti and DuBeck with conspiracy to evade taxes in violation of 18 U.S.C. § 371. Counts Two through Twelve charged them with failure to account for and pay federal employment taxes in violation of 26 U.S.C. § 7202. Counts Thirteen through Fifteen charged Lionetti with personal income tax evasion in violation of 26 U.S.C. § 7201,[2] and, under that same statute, Count Sixteen charged DuBeck with personal income tax evasion. Lionetti and DuBeck initially pled not guilty to all of the charges, but before

[1] The District Court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

[2] The government calculated that Lionetti's two medical practices owed the Internal Revenue Service ("IRS") approximately $2.1 million for the years 2000 to 2005, and that Lionetti owed the IRS $246,791 for past due personal income taxes for the years 1999 to 2001.

trial, DuBeck entered into a plea agreement pursuant to which he pled guilty to Counts One and Sixteen and agreed to testify against Lionetti in exchange for a favorable sentencing recommendation.

At trial, DuBeck testified that he told Lionetti that he did not file any "payroll tax forms" for Lionetti's medical practices from 1999 to 2001. In his defense, Lionetti claimed ignorance and testified that DuBeck had sole responsibility for the business administration and the finances of both practices. Lionetti also claimed that DuBeck was embezzling money by diverting patient funds to himself and that DuBeck failed to file Lionetti's personal income tax returns "so he could keep the money." (Appellant Br. at 39.) To prove his point, Lionetti sought to introduce testimony pertaining to a 1994 theft conviction of DuBeck for diverting funds to himself when he purported to be a representative of Northwestern Life Insurance Company ("NLIC"). Lionetti wanted victims of that earlier crime "to testify that they gave money to DuBeck and trusted him to transmit the money to the insurance company." (Appellant Br. at 22.) Lionetti argued that the evidence should be admitted as "reverse 404(b) evidence" because it demonstrated "a common scheme or plan" on DuBeck's part, as opposed to DuBeck's propensity to commit a crime. (App. at A213.) The District Court declined to admit the evidence.

Lionetti was found guilty with respect to the personal income tax evasion charges, but acquitted of the conspiracy and employment tax evasion charges. During sentencing,

3

however, the District Court considered the employment tax evasion charges, finding by a preponderance of the evidence that Lionetti was responsible for "more than two million dollars in tax losses." (App. at A351-52.) The Court determined that Lionetti's base offense level under the Sentencing Guidelines ("Guidelines") was 22 as opposed to 18; the latter being the level it would have been if only the personal income tax evasion charges were considered.

At the sentencing hearing on May 31, 2007, Lionetti argued that he should receive downward departures "based upon [his] medical service to the community and the extraordinary level of care and devotion he provided to his patients." (Appellant Br. at 30.) The District Court denied Lionetti's applications for downward departures, stating that "a doctor['s] very devoted patient base ... [is not] so exceptional, so extraordinary that he's entitled to a downward departure under the Guidelines ..." (App. at A359.) After undertaking the requisite sentencing analysis under 18 U.S.C. § 3553(a), the Court sentenced Lionetti to 41 months' imprisonment, which was the lowest sentence recommended under the Guidelines for an offense level of 22. Lionetti was also sentenced to three years' supervised release, a fine of $7,500 and restitution to the IRS in the amount of $246,791. This timely appeal followed.

**II. Discussion**

Lionetti argues before us that the District Court erred in excluding the testimony pertaining to DuBeck's prior theft conviction and in imposing sentence. We address those contentions in turn.

> A. *The District Court Did Not Err in Excluding the Testimony Pertaining to DuBeck's Prior Theft Conviction*[3]

Lionetti argues that the District Court erred "in prohibiting [him] from using 'reverse 404(b)' evidence on cross-examination regarding [] DuBeck's nearly identical thefts." (Appellant Br. at 36.) Rule 404(b) provides that "[e]vidence of other crimes ... is not admissible to prove the character of a person" although it may be admissible for "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). Lionetti claims that the evidence he sought to introduce – that is, testimony from the victims of DuBeck's 1994 theft – "goes directly" to all of Rule 404(b)'s exceptions, except identity, because it is relevant to his defense. (Appellant Br. at 38.) We disagree.

First, Lionetti provides no specific explanation as to why he believes this evidence falls within Rule 404(b)'s exceptions. *See United States v. Morley*, 199 F.3d 129, 133 (3d Cir. 1999) ("a proponent's incantation of the proper uses of such evidence under [Rule 404(b)] does not magically transform inadmissible evidence into admissible evidence").

---

[3]We review the District Court's evidentiary ruling for an abuse of discretion. *United States v. Givan*, 320 F.3d 452, 463 (3d Cir. 2003).

Second, that the evidence might have been relevant[4] to Lionetti's defense does not, in itself, render the evidence admissible; it must still come within one of the articulated exceptions in Rule 404(b). *See id.* (evidence must be "*both* relevant and admissible for a proper purpose) (emphasis added). Lionetti wanted to introduce the evidence to show a "common scheme or plan" on DuBeck's part to embezzle and divert funds. The District Court noted, however, that Lionetti could not "clearly articulate how the evidence fits into a chain of logical inferences, no link of which may be the inference that ... [DuBeck] ... has the propensity to commit the act charged." The District Court did not abuse its discretion in finding the evidence inadmissible under Rule 404(b).[5]

---

[4]Even accepting Lionetti's assertion that DuBeck had responsibility for filing Lionetti's personal income tax returns and failed to do so, we confess difficulty in understanding how a parade of witnesses about DuBeck's 1994 theft conviction bears in any meaningful way on Lionetti's personal income tax evasion charges, the only charges of which he was convicted in this case. His theory requires not only that the jury accept the story about DuBeck handling Lionetti's personal as well as business taxes but that it also accept that Lionetti was so divorced from his own individual responsibility – including the responsibility to sign his tax returns – that he had no idea his taxes were not being filed. Any "common scheme or plan" connection with the 1994 theft is tenuous, to say the least.

[5]Lionetti also argues that the evidence should have been admitted under Federal Rule of Evidence 609(a)(2), which allows into evidence proof that a witness has been convicted of a crime. The argument is misplaced, however, because the District Court did allow into evidence the information permitted by Rule 609, namely that DuBeck had been convicted of the 1994 offense. Moreover, salient facts underlying that conviction were discussed during DuBeck's testimony. (*See* App. at A215 (noting that DuBeck "testified [during trial] that[] he had diverted ... premiums and put it into a business account").)

*B.* *The District Court Did Not Err in Sentencing Lionetti* [6]

Next, Lionetti argues that the District Court erred during sentencing. He claims that his sentence was unreasonable and unconstitutional because the Court considered as "relevant conduct" under the Guidelines conduct for which he was charged but acquitted. He also argues that his vocation as a leading and revered Lyme disease physician should have served to reduce his sentence. None of these contentions are persuasive.

*1.* *That Lionetti's Base Offense Level Included Consideration of Conduct for Which He Was Acquitted Does Not Render the Sentence Unreasonable*

Lionetti claims that it was unreasonable for the District Court to use the employment tax evasion charge for which he was acquitted to determine his base offense level. Under the Guidelines, a court may consider "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant" when determining a base offense level. Sentencing Guidelines Manual § 1B1.3(a)(1)(A). Acquittal does not render conduct irrelevant, since a finding that the government has failed to prove guilt beyond a reasonable doubt is a far cry from a finding that the defendant did not do what he was accused of doing. The Supreme Court has explained that "a jury's verdict of acquittal does not prevent the sentencing court from

---

[6] We review sentences for reasonableness, and a sentence is reasonable so long as the trial court did not abuse its discretion such that the court "[had] a reasoned basis for exercising ... legal decision-making authority." *See Rita v. United States*, 127 S. Ct. 2456, 2465-68 (2007) ("reasonableness review merely asks whether the trial court abused its discretion") (internal quotations omitted).

7

considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." *United States v. Watts*, 519 U.S. 148, 157 (1997).

The District Court found, by a preponderance of the evidence, that Lionetti was responsible for the unpaid employment taxes because he knew from a prior bankruptcy filing that he owed employment taxes but still did not pay them. (*See* App. at A352 (noting that "based on ... bankruptcy filings, Lionetti knew he had employment tax issues and he owed employment taxes").) This finding is supported by the record and was well within the Court's discretion. Lionetti contends that, because the Court's finding increased the range of his advisory Guidelines sentence, it violated the Sixth Amendment. That argument is without merit, because the "Sixth Amendment [does not] automatically forbid a sentencing court to take account of factual matters not determined by a jury and to increase the sentence in consequence." *Rita*, 127 S. Ct. at 2466-67. The District Court did not err by taking Lionetti's employment tax evasion charge into account during sentencing.

2.     *The District Court Did Not Err in Sentencing Lionetti to 41 months' Imprisonment*

Lionetti further claims that the District Court erred because it did not give meaningful consideration to the Section 3553(a) factors in imposing a sentence of 41

months' imprisonment.[7] *See United States v. Cooper*, 437 F.3d 324, 329 (3d Cir. 2006) (sentence is reasonable only where "the trial court gave meaningful consideration to the § 3553(a) factors"). Lionetti points to the fact that a number of his patients attended the sentencing hearing to support him and wrote letters on his behalf, which, he claims, demonstrates that his patients will be harmed if he is imprisoned and that his sentence should be adjusted accordingly.[8]

During sentencing, the District Court considered Lionetti's important work as a physician treating Lyme disease, but also noted that sentencing always impacts third parties. (*See* App. at A358 ("it would be a very unusual case where a sentencing does not impact third parties").) The record before us is clear that the District Court took the § 3553(a) factors into account when imposing Lionetti's sentence (*see* App. at A363 (the

---

[7] Lionetti further argues that the Court should have imposed a lower sentence due to "other mitigating circumstances." (Appellant Br. at 57.) It is unclear whether Lionetti's blanket assertion is distinct from his argument pertaining to the 3553(a) factors. In any event, the District Court did not abuse its discretion. The Court explicitly acknowledged and considered the purported "mitigating circumstances." (*See* App. at A359 (noting that the patients "loved" Lionetti and that there was "no question [the] patients swear by him.").)

[8] Lionetti also argues that the District Court erred by denying his motion for downward departures based on his medical service. He claims that the Court did not consider his motion because it rejected the downward departures before he presented his witnesses in support of the departure. The record, however, reflects that the District Court considered Lionetti's applications on their merits and decided not to grant them. We will not disturb that decision. *See United States v. Cooper*, 437 F.3d 324, 332-33 (explaining that, post-*Booker*, we continue to "decline[] to review discretionary decisions to deny departure, unless for allegation of legal error").

Court noting the "need to consider the factors under § 3553(a)(1)" and then proceeding to address each of them), and that the 41-month term of imprisonment was reasonable.[9]

## III.     Conclusion

For the foregoing reasons, we will affirm the judgment of conviction and sentence imposed by the District Court.

---

[9]Finally, despite Lionetti's arguments to the contrary, 18 U.S.C. § 3553(a)(6) is not "violated" by Lionetti's receiving a longer sentence than DuBeck did because, as the Court noted, DuBeck was "in a different category" than Lionetti since he cooperated with the government.